# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:16CV00003-JHM

CHARLES FULKERSON AND CINDY FULKERSON
t/a WHITTAKER SHOOTING SUPPLY, INC.                          PETITIONERS

V.

LORRETTA E. LYNCH, ET AL.                                    RESPONDENTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment [DN 38, DN 39]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Petitioners, Charles Fulkerson and Cindy Fulkerson, t/a Whittaker Shooting Supply, Inc., seek review of the denial of a Federal Firearm License ("FFL") to Whittaker Shooting Supply by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Petitioners, Charles Fulkerson and Cindy Fulkerson, applied for the FFL under the name of Whittaker Shooting Supply. On February 25, 2015, the ATF denied the license citing to multiple violations of the Gun Control Act of 1968 ("GCA") by the Fulkersons discovered during a prior criminal investigation that had been initiated on January 4, 2007. The ATF identified the following violations of the GCA: Charles Fulkerson (hereinafter "Fulkerson") was engaged in the business of dealing in firearms on the internet without an FFL in violation of 18 U.S.C. § 922(a)(1); Fulkerson traveled to Illinois, Pennsylvania, Indiana, and Michigan for the purposes of acquiring firearms he would sell on the internet in violation of 18 U.S.C. §§ 922(a)(1)(A) and § 924(n); Fulkerson went to Illinois on numerous occasions and transported firearms from Illinois into Kentucky in violation of 18 U.S.C. § 922(a)(3); and Cindy Fulkerson repeatedly falsified ATF

4473 Forms by certifying that she was the actual purchaser of firearms when in fact Fulkerson was the true purchaser in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A).

Pursuant to 18 U.S.C. § 923(f)(2), the Petitioners requested a hearing. The hearing officer determined that Fulkerson violated multiple provisions of the GCA when he "engaged in business as a dealer in firearms, including traveling out-of-state to obtain firearms for sale without obtaining the necessary license." (Administrative Record 345.) After reviewing the record and the hearing officer's report, the Director of Industry Operations ("DIO") David Johansen issued a Final Notice of Denial of Application or Revocation of Firearms License, ATF Form 5300.13, to Whittaker Shooting Supply, Inc., on November 13, 2015. Petitioners appealed the denial by the ATF of the FFL pursuant to 18 U.S.C. § 923(f)(3). The parties have now filed cross-motions for summary judgment.

## II. STANDARD OF REVIEW

Under 18 U.S.C. § 923(d)(1), a FFL is required for anyone "engag[ing] in the business of importing, manufacturing, or dealing in firearms." The Attorney General has authority to deny an application for a FFL pursuant to 18 U.S.C. § 923(d)(1)(C) after notice and opportunity for a hearing if an applicant has willfully violated any provision of the GCA.[1] 18 U.S.C. § 923(e), (f). A district court's review of the Attorney General's decision to deny an FFL is *de novo*. 18 U.S.C. § 923(f)(3). "A reviewing court 'may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered'" at the administrative hearing. Dick's Sporting Goods, Inc. v. Boydston, 143 F. Supp. 3d 732, 740 (W.D. Tenn. 2015)(citing 18 U.S.C. § 923(f)(3)). Courts have interpreted the *de novo* standard of review under 18 U.S.C. § 923(f) narrowly. "'The language of § 923(f)(3) does not call upon this Court to decide whether it would [deny the license in its] own judgment, but whether all of the evidence presented is

---

[1] The authority of the Attorney General is essentially delegated to the ATF Director of Industry Operations.

sufficient to justify the Attorney General's [denial] of the license.'" Dick's Sporting Goods, 143 F. Supp. 3d at 740 (quoting Pinion Enters., Inc. v. Ashcroft, 371 F. Supp. 2d 1311, 1315 (N.D. Ala. 2005)). In other words, the district court must determine whether the decision to deny the application was "authorized." Lumber Jack Bldg. Centers v. Alexander, 536 F. Supp. 2d 804, 806–07 (E.D. Mich. 2008); Borchardt Rifle Corp. v. Cook, 727 F. Supp. 2d 1146, 1158–59 (D.N.M. 2010), aff'd, 684 F.3d 1037 (10th Cir. 2012).

### III. DISCUSSION

#### A. Willful Violation

Petitioners argue that the Respondents are unable to establish any willful violation of the Gun Control Act. An application for a FFL may be denied if the applicant has willfully violated any provision of the Gun Control Act or the regulations issued under it. 18 U.S.C. § 923(d)(1)(C). "The majority of circuits, including the Sixth Circuit, have consistently held that where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." Appalachian Res. Dev. Corp. v. McCabe, 387 F.3d 461, 464 (6th Cir. 2004). An applicant "'violates the statute when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e. recklessly violates them).'" Shaffer v. Holder, 2010 WL 1408829, *10 (M.D. Tenn. Mar. 30, 2010)(quoting Armalite, Inc. v. Lambert, 544 F.3d 644, 647 (6th Cir. 2008)).[2] "[A] negligent violation of the statute is not sufficient to establish a cognizable violation." Shaffer, 2010 WL 1408829 at *10 (citing Garner v. Lambert, 2009 WL 2749709, *4 (6th Cir. Sept.1,

---

[2] "The six Courts of Appeals addressing what constitutes a 'willful' violation of the firearms licensing provisions have agreed on an interpretation, holding that a firearms dealer's violation is willful where he 'knew of his legal obligation and purposefully disregarded or was plainly indifferent to the . . . requirements.'" Vineland Fireworks Co., Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 544 F.3d 509, 518 (3d Cir. 2008).

3

2009)). However, "'[w]illfulness' under the GCA does not require a heightened showing of 'bad purpose' or evil motive; rather, evidence of an individual's disregard of a known legal obligation is entirely sufficient." Shaffer, 2010 WL 1408829, *10 (citing Procaccio v. Lambert, 233 Fed. Appx. 554, 558 (6th Cir. 2007)). Furthermore, "[a] single willful violation of the GCA is enough to deny a federal firearms license application or revoke a federal firearms dealer's license." Shaffer, 2010 WL 1408829, *10 (citing Appalachian Res. Dev. Corp., 387 F.3d at 464. See also Cook v. Herbert, 2004 WL 40525, *2 (W.D. Va. Jan. 5, 2004); 3 Bridges, Inc. v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms, 216 F. Supp. 2d 655, 659 (E.D. Ky. 2002).

Petitioners maintain that between 2006 and 2007, Fulkerson was an agent of Ron's Sport Shop and Whittaker Guns where he was directed to purchase firearms on behalf of the these FFLs. Petitioners state that during this time period, Fulkerson would travel to auctions and other licensees to acquire firearms. Petitioners maintain that Fulkerson would then bring the firearms back to Kentucky and log them into the Acquisition and Disposition Books ("A&D Books") of either Whittaker Guns or Ron's Sport Shop. Petitioners represent that in August of 2006, in an effort to ensure compliance with federal law, Fulkerson contacted ATF in both Louisville and Indianapolis to confirm that as an agent for both Whittaker Guns and Ron's Sport Shop, he could list firearms owned by Whittaker Guns and Ron's Sport Shop on gunbroker.com provided he: filled out the Firearm Transaction Record (hereinafter "4473 Forms"), underwent a background check, and then returned the guns to the FFL to be shipped to another FFL. Based on this account of the facts, Petitioners argue that the Respondents are unable to establish any willful violation of the Gun Control Act.

A review of the Administrative Record and the additional evidence submitted by the parties reflect that Petitioners committed willful violations of the Gun Control Act. Specifically,

Fulkerson engaged in the business of dealing in firearms without a FFL on gunbroker.com. Special Agent Kirk Steward initiated an investigation of Fulkerson in 2007 after a confidential informant contacted ATF and reported that Fulkerson was selling firearms on gunbroker.com under the identification of Brushfork and was trafficking firearms across state lines. An undercover ATF agent purchased a handgun from Fulkerson through the gunbroker.com website. Payment of the handgun was sent directly to Fulkerson, and e-mail communication reflected the sale was from Fulkerson. Fulkerson had no FFL and, despite Petitioners' argument to the contrary, he did not act as an agent for Whittaker Guns or Ron's Sport Shop. Ron Marshall, the owner of Ron's Sport Shop, denied that Fulkerson acted as agent for the company. (AR 537-539.) In supplemental statements to the ATF, Ron Marshall indicated he had permitted Fulkerson to use his license to make firearms purchases, was aware of Fulkerson's gunbroker.com sales, the firearms in question did not always come into Marshall's store, and that while his license and address was used, Fulkerson was making the sales and the shipment of the firearms. Marshall also confirmed that he did not receive money from the sales of the firearms. In fact, Ron's Sport Shop had its FFL revoked for aiding and abetting Fulkerson's activities and for falsifying its A&D Book. Similarly, Rebecca Whittaker, owner of Whittaker Guns and the mother of Cindy Fulkerson, stated that Petitioners were never employees or agents of the business during the time they conducted the internet gun sales in 2006 and 2007. (AR 786-87.)

The record further reflects that Fulkerson sold hundreds of guns over the internet during the period in question. Fulkerson's bank records reflect that the Fulkersons bought the guns Fulkerson sold online; buyers paid Fulkerson directly and personally for the guns; and he deposited the money from the sales into his personal bank account. Additionally, during this period, Fulkerson packaged the guns in his garage, shipped the guns to the purchaser, and paid

over $10,000 in shipping costs personally. Rebecca Whittaker stated that the firearms sold by the Fulkersons on gunbroker.com were not part of the business inventory of Whittaker Guns and Whittaker Guns never received any proceeds or other benefits from the sales the Fulkersons made on gunbroker.com. (AR 786.) When interviewed by ATF, United States Postal Service employee Elizabeth McKenney stated that Fulkerson began shipping firearms in 2006 and did so until 2007. McKenney informed agents that Fulkerson had told her that he was not associated with Whittaker Guns and was in business for himself.

Additionally, Fulkerson traveled from Kentucky to Illinois (General Auction, Mattoon, Illinois) and Pennsylvania (KBI, Inc., Harrisburg, Pennsylvania) to purchase guns for his online gun sales in violation of 18 U.S.C. § 924(n). With respect to Cindy Fulkerson, the record reflects that Cindy Fulkerson acquired 94 firearms from Whittaker Guns over a four to five month period. These firearms were sold or attempted to be sold on gunbroker.com by Fulkerson. Cindy falsified ATF 4473 forms by certifying that she was the purchaser of firearms that were actually purchased for Charles Fulkerson in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A). Significantly, eighty-three of the 94 firearms purchased from Whittaker Guns were later recorded in the A&D Book of Ron's Sport Shop, instead of back in the Whittaker Guns A& D Book.

Finally, there is also ample evidence that Petitioners were aware they needed an FFL to conduct online gun sales. The Fulkersons have a firearms business background. They worked for Whittaker Guns from 1997 to 2005 and were familiar with federal guns laws in general by virtue of their employment. Fulkerson demonstrated in his testimony that he understood the recordkeeping and other requirements applicable to firearm transactions. Rebecca Whittaker testified that she had informed Fulkerson that he needed an FFL to conduct the online sales. (AR

467, 786-787). Additionally, evidence exists that Fulkerson informed Victor Kennedy that ATF agents had told him in 2001 that he needed an FFL if he was going to sell firearms. (AR 394.)

In support of their argument that Respondents are unable to establish a willful violation of the GCA, Petitioners claim that Fulkerson inquired as to the lawfulness of his activities and was told by ATF that it was lawful. However, the account of the conversation on August 15, 2006, relayed by Fulkerson indicates that he informed an ATF representative on the phone that he was acting as an agent for an FFL holder. With that information, the ATF representative informed him that the guns had to go from one FFL to another FFL and be reflected in the A&D Books of that license holder. (AR 232-237.) Even accepting Fulkerson's representations regarding the calls to the ATF, the advice allegedly communicated by the ATF agent was based upon Fulkerson's representation that he was acting as an agent for either Whittaker Guns or Ron's Sport Shop. The administrative record and the additional exhibits submitted by the parties support the finding by the DIO that Fulkerson was not acting as an agent for either Whittaker Guns or Ron's Sport Shop.

Similarly, in an effort to refute the ATF's allegations, Fulkerson both testified at the administrative hearing and submitted an additional declaration dated April 24, 2017, representing that the vast majority of the 94 firearms Cindy Fulkerson purchased from Whittaker Guns went back into the A&D Book of Whittaker Guns. However, Fulkerson's testimony conflicts with DIO Johansen's review of the A&D Book of Whittaker Guns which showed that 83 of those 94 guns did not go back to the A&D Book of Whittaker Guns. (AR 10, 12-14.) Additionally, Fulkerson avers that the guns Cindy Fulkerson purchased from Whittaker Guns that are recorded in Ron's Sport Shop A&D Book were sold to Ron's Sport Shop based on an agreement between Daryl Whittaker and Ron Marshall. This declaration by Fulkerson is contradicted by the

7

Administrative Record and is not supported by any of the testimony or affidavits of Marshall or Whittaker. In fact, Ron's Sport Shop listed these firearms in their A&D Book as acquired from Fulkerson, not from Whittaker Guns which is inconsistent with Fulkerson acting as an agent for any FFL. (AR 684, 708, 721.)

Based on the reasons set forth above, the Court finds that the evidence presented is sufficient to justify the Attorney General's denial of Petitioners' FFL license for committing willful violations of the GCA.

### B. Tiahrt Amendment

In their response, Petitioners contend that the Tiahrt Amendment found in the Consolidated and Further Continuing Appropriations Act of 2012 precludes the use of Gun Acquisition and Disposition records from Ron's Sport Shop and Whittaker Guns in Petitioners' ATF proceeding. Petitioners maintain that the use of such records may only be in a proceeding against the FFL holder required to maintain the records in question. Petitioners offer no authority to support this argument. In fact, the text of the Tiahrt Amendment permits the use of such records in any "proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms, and Explosives to enforce the provisions of Chapter 44 of such title, or a review of such an action or proceeding." 125 Stat. 552, 609-610. Licensing proceedings, such as the one in the present case, are commenced by the ATF to enforce 18 U.S.C. § 923 which is a part of Chapter 44. Accordingly, the Court rejects this argument.

### C. Due Process

Petitioners argue that the ATF's hearing process and standards violated their right to due process. Petitioners maintain that the following items violated the Due Process Clause: (1) ATF revocation hearings are held in front of a hearing officer who is a former or current ATF

employee; (2) Petitioners were denied all forms of discovery with the exception of the exhibits Respondents intended to submit at the administrative hearing; (3) Respondents presented hearsay evidence including statements of various individuals; and (4) DIO Johansen considered records from ATF's Out of Business Records Center without notice to Petitioners.

The Due Process Clause of the Fifth Amendment to the Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law . . ." U.S. Const. Amend. V. "Determining the scope of procedural protections guaranteed by the Due Process Clause is a two-step inquiry. Morrissey v. Brewer, 408 U.S. 471, 481 (1972). First, the court determines whether a claimant possesses an interest triggering the Due Process Clause. Id. Second, the court determines what process is due. Id." Sovereign Guns, Inc. v. U.S. Dep't of Justice, 2016 WL 7187316, *4 (E.D.N.C. Dec. 9, 2016). "'The fundamental requirement of due process is opportunity to be heard at a meaningful time and in a meaningful manner.'" Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

The Court finds that there is no merit to Petitioners' claim that their due process rights have been violated. Petitioner received due process in accordance with the GCA and its regulations through an agency hearing to review the denial of their application for the FFL. Petitioners were also granted rights to representation by counsel, to present witnesses and testimony, to present exhibits, and to cross-examine witnesses who testified at that hearing. See 27 C.F.R. § 478.72 ("During the hearing the applicant will have the opportunity to submit facts and arguments for review and consideration[.]"). Furthermore, Petitioners received due process in this federal action for judicial review.

Courts that have examined administrative proceedings and decisions rendered under the GCA in light of the Mathews balancing test have held that such decisions are not void for the

lack of process. Sovereign Guns, 2016 WL 7187316, *5; Weaver v. Harris, 486 Fed. Appx. 503, 506 (5th Cir. 2012); Shaffer, 2010 WL 1408829 at*15. Despite Petitioners' argument to the contrary, the combination of investigative and adjudicative functions in administrative hearings, such as FFL hearings, do not alone constitute a due process violation. See DiMartino v. Buckles, 129 F. Supp. 2d 824, 832 (D. Md. 2001)(citing Withrow v. Larkin, 421 U.S. 35, 54-55 (1975)). See also DiMartino v. Buckley, 19 Fed. Appx. 114, 116 (4th Cir. Sept. 25, 2001) ("The district court correctly determined that this argument was foreclosed by the Supreme Court's holding in Withrow v. Larkin[.]") [affirming the District Court's decision]; Harrison v. U.S. ex rel. Dep't of Treasury, 2006 WL 3257401,*11 (E.D. Okla. Nov. 9, 2006). Similarly, hearsay is admissible in administrative hearings, even in the absence of cross-examination. Flatford v. Chater, 93 F.3d 1296, 1305 (6th Cir. 1996); Myers v. Secretary of Health & Human Servs., 893 F.2d 840, 846 (6th Cir. 1990).

Furthermore, the examination of ATF's Out of Business Records for Whittaker Guns by DIO Johansen in an effort to confirm the testimony of Fulkerson at the hearing did not violate Petitioners' due process rights. In fact, the record reflects that in denying Petitioners' motion to reconsider, Acting Director of Industry Operations Andrew Lange indicated that the review of the Out of Business Records of Whittaker Guns was conducted by the DIO to support the findings of conclusions of willful violations in the final notice of denial of the FFL. Lange further offered to review any additional evidence Petitioners had with respect to the firearms related to the Out of Business Records. Specifically, Lange provided that "if you have information which you feel rebuts that finding concerning the 83 firearms, I am willing review and consider it." (DN 38-2 at 1.) Petitioners offered no rebuttal regarding the firearms in question at that time.

With respect to discovery, "[i]t is well settled that parties to judicial or quasi-judicial proceedings are not entitled to pre-trial discovery as a matter of constitutional right." N.L.R.B. v. Interboro Contractors, Inc., 432 F.2d 854, 857-58 (2d Cir. 1970). Kelly v. U.S. E.P.A., 203 F.3d 519, 523 (7th Cir. 2000)("But there is no constitutional right to pretrial discovery in administrative proceedings."). It is uncontested that Respondents provided Petitioners' counsel with a copy of all government exhibits in advance of the hearing. Furthermore, the record reflects that the parties entered an Agreed Order in the present case [DN 28] addressing discovery the Petitioners requested. As a result of that Order, Mark Lowney, Division Counsel for the Louisville Field Division of the ATF, submitted an affidavit dated January 30, 2017, indicating that he reviewed all the records available to him and discussed the matter with ATF agents involved in the case and concluded that the records related to Mr. Fulkerson's alleged inquiries regarding the legality of his conduct did not exist. Additionally, Petitioners asked a government witness on cross-examination at their administrative hearing about the existence of these records. Accordingly, the Court finds that Petitioners' due process rights were not violated in the present case.

**D. Equal Protection**

Petitioners contend that the Respondents violated their right to equal protection under the Fifth Amendment by treating them differently from other similarly situated applicants for federal firearms licenses. Specifically, Petitioners argue that the ATF granted FFLs to Matthew and Victor Kennedy who engaged in the same behavior as Petitioners. Petitioners contend that the Kennedys were purchasing firearms to resell on gunbroker.com for a profit over a three-year period. The Kennedys were both granted licenses.

Petitioners advocate a "class of one" equal protection argument. Equal protection claims


11

With respect to discovery, "[i]t is well settled that parties to judicial or quasi-judicial proceedings are not entitled to pre-trial discovery as a matter of constitutional right." N.L.R.B. v. Interboro Contractors, Inc., 432 F.2d 854, 857-58 (2d Cir. 1970). Kelly v. U.S. E.P.A., 203 F.3d 519, 523 (7th Cir. 2000)("But there is no constitutional right to pretrial discovery in administrative proceedings."). It is uncontested that Respondents provided Petitioners' counsel with a copy of all government exhibits in advance of the hearing. Furthermore, the record reflects that the parties entered an Agreed Order in the present case [DN 28] addressing discovery the Petitioners requested. As a result of that Order, Mark Lowney, Division Counsel for the Louisville Field Division of the ATF, submitted an affidavit dated January 30, 2017, indicating that he reviewed all the records available to him and discussed the matter with ATF agents involved in the case and concluded that the records related to Mr. Fulkerson's alleged inquiries regarding the legality of his conduct did not exist. Additionally, Petitioners asked a government witness on cross-examination at their administrative hearing about the existence of these records. Accordingly, the Court finds that Petitioners' due process rights were not violated in the present case.

**D. Equal Protection**

Petitioners contend that the Respondents violated their right to equal protection under the Fifth Amendment by treating them differently from other similarly situated applicants for federal firearms licenses. Specifically, Petitioners argue that the ATF granted FFLs to Matthew and Victor Kennedy who engaged in the same behavior as Petitioners. Petitioners contend that the Kennedys were purchasing firearms to resell on gunbroker.com for a profit over a three-year period. The Kennedys were both granted licenses.

Petitioners advocate a "class of one" equal protection argument. Equal protection claims

can be brought by a "class of one," where the plaintiff alleges that the government treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment. Warren v. City of Athens, Ohio, 411 F.3d 697, 710–11 (6th Cir. 2005)(citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "The 'rational basis' test means that courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" Warren, 411 F.3d at 710 (citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 84 (2000)). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." Warren, 411 F.3d at 710 (citing Klimik v. Kent County Sheriff's Dept., 91 Fed. Appx. 396, 400 (6th Cir. 2004) (citations omitted); Bower v. Village of Mount Sterling, 44 Fed. Appx. 670, 677–78 (6th Cir. 2002)).

After a review of the record, the Court finds that Petitioners' Equal Protection rights under the Fifth Amendment were not violated. Petitioners have failed to negate every conceivable basis that might support the denial of the FFL. In fact, the administrative record is full of evidence of multiple GCA violations, any of which constitute a conceivable basis for the denial of the FFL. As discussed above, the law clearly provides that ATF may deny an applicant's FFL upon a finding of even a single willful violation of the Gun Control Act. Thus, the denial of Petitioners' FFL is supported by the record. Additionally, the Court cannot conclude that the varying treatment of the Kennedys and the Fulkersons is so unrelated to the achievement of "any combination of legitimate purposes." Warren, 411 F.3d at 710. As noted by

12

the Respondents, unlike the Fulkersons, the Kennedys cooperated with the investigation of the violation of the GCA. In fact, Matthew Kennedy brought the conduct of Fulkerson to the ATF's attention. (AR 109.) Further, Petitioners have not submitted any evidence of animus or ill-will on the part of the ATF beyond speculative, unsupported claims that Fulkerson ruined an ATF sting operation at a flea market in 2001. For these reasons, the Court finds that the Petitioners' "class of one" equal protection claim fails.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by Petitioners, Charles Fulkerson and Cindy Fulkerson, t/a Whittaker Shooting Supply, Inc., [DN 38] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by Respondents [DN 39] is **GRANTED**. A judgment will be entered consistent with this Opinion.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 6, 2017

cc: counsel of record